IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LEWIS LEE CLARK**, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 1:18-cv-01565<br>) |
| **RANDY PFISTER, WALTER NICHOLSON, DR. OKEZIE, MEDICAL STAFF MEMBER L. WILLIAMS, WEXFORD HEALTH SOURCES INC. AND JOHN DOE AND JANE DOE, UNKNOWN EMPLOYEES OF THE ILLINOIS DEPARTMENT OF CORRECTIONS AND WEXFORD HEALTH CARE, INC.** | ) Hon. District Judge Franklin U. Valderrama<br>) Hon. Magistrate Maria Valdez<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MOTION TO COMPEL

Plaintiff Lewis Lee Clark ("Plaintiff"), by and through his undersigned counsel, and pursuant to Federal Rule of Civil Procedure 37 and L.R. 37.2, moves this Court for an order compelling Defendants Randy Pfister and Walter Nicholson (collectively, the "IDOC Defendants"), and Dr. Christian Okezie, LaTanya Williams, P.A., and Wexford Health Sources Inc., (collectively, the "Wexford Defendants") to respond to Plaintiff's discovery requests. In support thereof, Plaintiff states as follows:

### I. INTRODUCTION

After engaging in initial written discovery, the parties and the Court attempted, unsuccessfully, to settle this case. These efforts continued from September 2019, to August 2020; during most of this time discovery was stayed. When discovery resumed, Plaintiff quickly learned that Defendants had not satisfied their obligations to produce responsive non-privileged documents. The parties met and conferred, but the Wexford Defendants claimed, without

support, that written fact discovery is closed, and Plaintiff may only take depositions. The Court's orders and the parties' joint filings prove otherwise. In tacit agreement that written discovery remains open, the IDOC Defendants have conferred with Plaintiff on several issues, but refuse to produce certain documents based on unsupported, boilerplate objections that other courts have squarely rejected. For the reasons described herein, this Court should do the same, and grant Plaintiff's Motion to Compel in its entirety.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Claims.

Plaintiff alleges that, pursuant to 42 U.S.C. § 1983, Defendants violated his Eighth and First Amendment rights by, respectively, their deliberate indifference to his serious medical needs, and by retaliating against him for filing this lawsuit. (*See* ECF 18 (the "Amended Complaint" or "Am. Compl.").) Plaintiff alleges that beginning August 15, 2017, the Wexford Defendants provided him constitutionally inadequate treatment, despite knowledge that he was regularly urinating blood, and despite his reports of extreme pain in his abdominal area and while urinating. (Am. Compl., ¶¶ 18-27.) They also delayed treating Plaintiff, delayed referring him to a specialist, failed to follow the specialists' treatment recommendations, and persisted with cheap, ineffective treatments. (Am. Compl., ¶¶ 30-36, 49-56, 70-77, 81-83.) Plaintiff also brings a *Monell* claim, alleging that Wexford maintained policies or customs that caused the unconstitutional medical care. (Am. Compl., ¶¶ 97-104.) For their part, the IDOC Defendants had actual knowledge of Plaintiff's suffering, and failed to take constitutionally adequate measures to remedy his suffering. (Am. Compl., ¶¶ 24, 26, 31, 39-40, 47, 51, 87-92.)

After Plaintiff filed his original *pro se* complaint, Defendants targeted him with retaliatory measures, including—among others—assigning Plaintiff, an African-American, to a cell with a known white supremacist, and obstructing his medical appointments. (Am. Compl.,

¶¶ 5, 57-69.) Defendants stepped up their retaliation after Plaintiff filed the Amended Complaint—in May 2019 they assigned Plaintiff to an uninhabitable cell containing visible mold growth and leaking sewage from the ceiling. Plaintiff is informed and believed that they kept Plaintiff there for nearly four months.

### B. Procedural Background.

Between May and July 2019, the parties exchanged their first round of written discovery requests and responses. Before proceeding further with discovery, on September 18, 2019, the Court ordered the parties to exchange settlement letters. (*See* ECF 58.) To accommodate settlement discussions, the Court on December 4, 2019, thereafter granted the parties' agreed motion to extend fact discovery (*see* ECF 60, 63), and on January 9, 2020 stayed discovery as part of its referral to this Court for a settlement conference (*see* ECF 65). Due to delays caused by the pandemic, the parties eventually held their conference on July 28, 2020. (*See* ECF 81.)

The parties were unable to reach a settlement, and jointly proposed that the Court schedule fact discovery to close on December 11, 2020. (*See* ECF 90.) The Court adopted the parties' proposal. (*See* ECF 91.) The parties thereafter submitted a joint status report confirming that they were "in the process of completing fact discovery," and that they agreed to extend the fact discovery cutoff "in light of the remaining fact discovery." (ECF 97.) This Court adopted the parties' joint proposal and extended "the fact discovery cutoff" until March 11, 2021, without limitation. (*See* ECF 98.)

Plaintiff diligently pursued discovery over the next several months, deposing four non-party witnesses and attempting to schedule other depositions. (*See* ECF 97.) Through the depositions, Plaintiff's counsel learned about categories of documents responsive to Plaintiff's first discovery requests that were not produced. Notably, Defendants had not stated in some of their relevant discovery responses that they were withholding documents subject to their

objections. To obtain these materials, Plaintiff sent meet-and-confer correspondences to the Wexford Defendants (on December 14) and the IDOC Defendants (on December 17). The parties subsequently exchanged emails and Defendants agreed to produce several categories of documents (*see infra*, L.R. 37.2 Certification),[1] but refused to produce other responsive documents, requiring Plaintiff to bring the present Motion.

### C. Discovery Disputes with Wexford Defendants.

The Wexford Defendants refuse to supplement their responses to Requests for Production 8 and 15. They do not make an effort to support their original objections to these requests. Rather, they claim that written fact discovery is closed and only "oral" fact discovery (i.e. depositions) is permitted. (The Wexford Defendants' responses to Plaintiff's First Requests for Production are attached hereto as Exhibit 1.) The Wexford Defendants have refused (on the same grounds) to respond to Plaintiff's second set of Requests for Production altogether (the "Second Requests," a copy of which is attached hereto as Exhibit 2).

### D. Discovery Disputes with IDOC Defendants.

The IDOC Defendants refuse to produce: (1) incident reports related to Plaintiff, which are responsive to IDOC Request for Production 3; (2) personnel files for Defendants Okezie and Williams, which are responsive to IDOC Request for Production 7; and (3) documents underlying reports critical of their medical referral procedures—specifically, the documents underlying two reports regarding inadequate treatment at IDOC facilities authored by court-appointed experts in *Lippert, et al. v. Gosh, et al*, No. 1:10-CV-04603 (N.D. Ill.) (together the "*Lippert* Reports"), which are responsive to IDOC Request for Production 19. (The IDOC

---

[1] The Wexford Defendants provided a limited supplemental production, which included medical records they thought they had already produced, brief resumes for Okezie and Williams and one email; the IDOC Defendants agreed to provide a supplemental production of documents responsive to several requests by January 21, 2021.

4

Defendants' Responses to Plaintiff's First Requests for Production are attached hereto as Exhibit 3.)

### III. LEGAL STANDARD

A party may seek an order compelling discovery under Federal Rule of Civil Procedure 37 when an opposing party fails to respond to discovery requests. Fed. R. Civ. P. 37. In responding to a motion to compel, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). "The burden is not satisfied by a 'reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Osada v. Experian Info. Solutions, Inc.*, 290 F.R.D. 485, 495 (N.D. Ill. 2012) (citation omitted). Instead, "[u]nsupported and unexplained objections such as 'irrelevant' or 'overbroad' are tantamount to making no objections at all." *Art Akiane LLC v. Art & Soulworks LLC*, No. 19 C 2952, 2020 WL 5604064 at *18 (N.D. Ill. 2020).[2]

Moreover, courts routinely recognize that "[d]iscovery cannot be a game of hide-and-seek. Our discovery system depends in large part on self-reporting." *Yahnke v. County of Kane*, No. 12 C 5151, 2013 WL 4537865 at *2 (N.D. Ill. 2013) (citing *Hogue v. Fruehauf Corp.*, 151 F.R.D. 635, 639 (C.D. Ill. 1993)). Therefore, "[w]hen discovery requests are made by a party, the party to whom the request is made has an obligation to respond accurately and fully. *Id*. This includes complying with Fed. R. Civ. P. 34(2)(C), which requires that each "objection must state whether any responsive materials are being withheld on the basis of that objection."

---

[2] In compliance with this Court's standing order, copies of all authority that is published only on an electronic database are attached hereto as Exhibit 5.

IV. **ARGUMENT**

    A. **All Fact Discovery Remains Open As the Court's Very Orders Demonstrate.**

All fact discovery remains open. Indeed, the parties twice asked the Court to extend "fact discovery," without limitation as to the type of discovery to be extended (*see* ECF 60, 97), and the Court twice granted these requests, entering orders that extended "fact discovery" without limitation, (*see* ECF 63, 98). There is simply no basis for the Wexford Defendants to contend that written fact discovery is somehow closed. No order, no schedule, no motion, and no correspondence between counsel limits—much less even purports to limit—current fact discovery.

Not surprisingly, the Wexford Defendants have not identified any support for their new contention that fact discovery is strictly limited to depositions. Nor have they explained why they need not supplement their initial production with responsive documents—an obligation they, on the one hand, acknowledged by agreeing to supplement certain responses (*see*, *supra* n.1), while, on the other hand, denying that same obligation with respect to other categories of documents, (*see infra*, pp. 7-9). Instead, the Wexford Defendants (while suffering no prejudice themselves) seek to prejudice Plaintiff through their own non-compliance with discovery rules.

Critically, the Wexford Defendants represented that they produced "any and all relevant documents … in the Defendants' care, custody, or control" relating to the allegations in the Amended Complaint. (Ex. 1, Request 3.) But they did not indicate—in violation of Rule 34(2)(C) that, in fact, they were withholding any documents. (Ex. 1, Requests 3, 8, 15.) Plaintiff only learned that fact months later, when Wexford employee Nicole Ramel testified that she sent emails regarding Plaintiff that corroborated the allegations in Plaintiff's complaint. These emails had not been produced, and the Wexford Defendants would be under no obligation to produce them if, as they would have it, fact discovery was closed for all things except depositions.

6

The Wexford Defendants relented and searched for and produced Ms. Ramel's email documents referencing Plaintiff. But they still maintain that they are under no obligation to comply with current (or future) written discovery. They are wrong, their position is baseless, and they must supplement their earlier responses and respond to Plaintiff's Second Requests.

### B. The Wexford Defendants Must Produce Defendant Okezie and Williams' Personnel File.

Setting aside the Wexford Defendants' baseless objection that written discovery is closed, they also stand on their relevancy objection to Request for Production 8, which seeks the personnel files for Defendants Okezie and Williams. (*See* Ex. 1, Request 8.) Defendants' boilerplate objection is untenable. Defendants are individuals sued for actions they took in their employment for Wexford. Their Wexford personnel files are reasonably likely to lead to relevant evidence regarding whether any of the Wexford Defendants were on notice (from prior disciplinary measures or otherwise) of the requisite standard of constitutionally adequate care, including the need to provide timely treatment.

Defendants' objection that producing these documents present security concerns is also untenable because the Wexford Defendants agreed that "[e]xcept on privilege grounds … no party may withhold information from discovery on the ground that it requires protection greater than that afforded" by the protective order. (*See* ECF 57, ¶ 9.) Courts routinely order production of staff personnel files, even in actions involving correctional staff. *See e.g., McCroy v. Illinois Dep't of Corr.*, No. 02-CV-3171, 2006 WL 8077033, *6 (C.D. Ill. May 12, 2006) (granting plaintiff's motion to compel production of correction officer's personnel file). Moreover, any

7

security concerns are addressed by the parties' protective order, which prohibits disclosure of such information outside the litigation. (*See* ECF 57.)[3]

### C. The Wexford Defendants Must Produce Documents Reflecting Any Agreements by Wexford To Provide Improved Medical Services.

Plaintiff requested documents relating to Wexford's agreement to provide improved medical services to inmates at IDOC facilities, including consent decrees, stipulated judgments, settlement agreements, and other agreements. (*See* Ex. 1, Request 15.) Defendants' boilerplate relevance and burdensomeness objections again fail. With respect to relevance, Plaintiff's claim squarely covers Wexford's failure to provide adequate medical care. Agreements by the Wexford Defendants to provide improved care demonstrates that it was on notice of the inadequacy of its policies and procedures for providing medical care to inmates.

With respect to the Wexford Defendants' objection that this request is "extremely burdensome," courts regularly reject such unsupported objections. *See e.g. Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, *5 (N.D. Ill. June 13, 2011) (holding that a defendant "must do more than say that this discovery is overly burdensome, it must support this argument with specific evidence as to the nature of the burden"); *Schloss v. City of Chicago*, No. 18 C 1880, 2020 WL 4339282, *7-8 (N.D. Ill. July 28, 2020) (Valdez, J.) (ordering production where objections did "not specify why the request is overbroad, nor do they describe the nature or scope of the burden of production or state whether any documents are being withheld on the basis of the objection"). Any burden here is minimal considering the Wexford Defendants are sophisticated parties with well-established and well-staffed legal and compliance departments that are familiar with producing such documents.

---

[3] Although not provided for in the protective order, Plaintiff would agree to the production of these records (and related testimony) as "Attorneys' Eyes Only" so they are not viewable by anyone but Plaintiff's counsel.

However, in an effort facilitate the Wexford Defendants' production of responsive documents, Plaintiff agrees to limit the scope of this request to documents created in the last 10 that discuss the provision of offsite or specialty care.

### D. The IDOC Defendants Must Produce All Incident Reports Relating to Plaintiff Generated between August 2017 and Present.

In response to Plaintiff's request for all documents relating to the allegations of Plaintiff's complaint (*see* Ex. 3, Request 3), the IDOC Defendants objected and produced some documents, but *did not* indicate they were withholding any documents on the basis of their objections. However, during Plaintiff's deposition of Ms. Ramel, Plaintiff learned that—in addition to her emails (which had gone unproduced)—she filed an incident report regarding IDOC staff housing Plaintiff in a moldy cell. Before Ms. Ramel's testimony, Plaintiff's counsel did not know "incident reports" regarding Plaintiff existed, or that the IDOC Defendants were withholding these documents. However, Plaintiff now knows that at least one incident report directly substantiates his retaliation claim. Plaintiff believes that other incident reports generated during the relevant period exist, and has asked the IDOC Defendants to locate and produce them.

However, during the parties' meet and confer exchanges, the IDOC Defendants' counsel maintained that locating incident reports relating to Plaintiff was unduly burdensome because the reports are stored in chronological order without regard to the individual who is the subject of the report. This objection is without merit for several reasons. *First*, the IDOC Defendants did not object to this request as unduly burdensome in their responses, and therefore, have waived this objection. *See* Ex. 3, Request 3; *Schloss*, 2020 WL 4339282 at *4 (Valdez, J.). *Second*, the IDOC Defendants could not identify how many reports are generated in a given time period to

9

substantiate their claim that it is burdensome to search for reports related to Plaintiff.[4]  *Third*, courts in the Seventh Circuit reject the argument that it is burdensome to search and retrieve responsive incident reports.  *See*, *e.g.*, *Smith v. Sternes*, No. 02 C 50178, 2003 WL 21418356, *4 (N.D. Ill. June 18, 2003) (granting plaintiff's motion to compel requiring defendants to search for incident reports describing incidents consistent with plaintiff's claims); *Pupo-Leyvas v. United States*, No. 208CV344RLY-WGH, 2009 WL 2245073, *3 (S.D. Ind. July 27, 2009) (granting plaintiff's motion to compel production of incident reports).

Given the on-going nature of the IDOC Defendants' unconstitutional retaliation and deliberate indifference, Plaintiff requests that the Court order IDOC Defendants to search for and produce all incident reports regarding Plaintiff generated from August 15, 2017 through present.

### E. The IDOC Defendants Must Produce Defendants Okezie and Williams' Personnel Files.

Plaintiff is informed and believed that the IDOC Defendants have access to Defendants Okezie and Williams' personnel files.  According to Wexford's contract with IDOC, Wexford must "maintain personnel files on all contract employees at the Health Care Unit … and shall make these records available to the Center's" Chief Administrative Officer, i.e. Defendants.[5]  These documents are relevant, responsive (*see* Ex. 3 at Request 7), and must be produced for the same reasons discussed *supra* pp. 7-8.

---

[4] In an effort to locate just the incident report Ms. Ramel filed about the moldy cell, Plaintiff's counsel identified the 100+ day period during which Plaintiff was housed in the moldy cell (between May 26, 2019 and September 12, 2019) and asked the IDOC Defendants to search that period for the report.  However, IDOC's counsel still objected to this narrow request as unduly burdensome.

[5] Although this contract is not marked confidential subject to the parties' protective order, it is voluminous, so Plaintiff is not attaching it hereto.  However, Plaintiff can provide a copy of the contract upon the Court's request.

### F. The IDOC Defendants Must Produce Documents Underlying the *Lippert* Reports.

IDOC Request 19 asked for documents concerning any study, report, analysis, assessment, investigation, or other inquiry into the quality of medical care provided to inmates at Stateville. This Request encompasses the 2014 report authored by court-appointed expert Dr. Ronald Shansky and the 2018 report authored by court-appointed expert Dr. Michael Puisis (relevant excerpts of which are attached hereto as Exhibit 4)[6] in *Lippert, et al. v. Gosh, et al*, No. 1:10-CV-04603 (N.D. Ill.), and all documents underlying these reports.

*Lippert* was a class-action lawsuit alleging inadequate healthcare provided to IDOC inmates, including at Stateville. In *Lippert*, the Court appointed experts to assess the medical care provided to IDOC inmates and to issue reports with their findings and recommendations. The reports include findings about Defendants' failure to provide inmates at Stateville timely medical care and the reasons for those unacceptable treatment delays, including systemic deficiencies that implicate the policies and customs of Defendant Wexford. (*See e.g.,* Ex. 4. at 10-11, 31-32, 62-69.) Many of these findings mirror the allegations in this case. (*Compare* Ex. 4 at 10 ("The Wexford system of utilization management is ineffective and for many patients is a barrier to timely care. The use of free care at UIC appears to have resulted in unacceptable delays. Waiting for unacceptable time periods for free care when care needs to be performed timelier has harmed patients.") *with* Am. Compl. at ¶ 49 (alleging that Plaintiff was "finally referred" to a to a urologist at the University of Illinois Hospital and Health Sciences System … more than seven (7) months after his symptoms began"). *See also Lymon v. Chamberlain et al.*,

---

[6] Both the 2014 and 2018 reports include facility-specific findings. *See e.g.,* Ex. 4 at Stateville Report, pp. 2-5, 48-49, 82-85. Without prejudice to his right to request documents underlying the entire *Lippert* Reports, Plaintiff is only attaching excerpts from the general section of the report and the Stateville-specific sections to limit the materials filed with the Court.

11

No. 17-CV-50093, 2020 WL 6940985 at *1 (N.D. Ill. Nov. 24, 2020) (describing how the *Lippert* Reports "identified numerous systemic failures in the prison healthcare system, including … delays relating to offsite services, referrals for specialty care, and follow-up visits with inmates").

Defendants' unexplained undue burden arguments fail for the reasons discussed *supra* p. 8. Moreover, at least one court has rejected similar efforts by IDOC officials to resist production of these same documents. *See e.g., Lymon*, 2020 WL 6940985 at *5-6 (Jensen, J.). As the court in *Lymon* recognized, Defendants cannot make a compelling claim of undue burden in identifying and producing these documents given that they "have already been collected and produced once." *Id.* at *4.

The records underlying and supporting the *Lippert* Reports are relevant because they will assist Plaintiff in establishing that his experience was not an isolated occurrence, but a result of Wexford policies and customs that caused the unconstitutional care that Plaintiff received. Moreover, they will show that all Defendants were on notice of systemic problems in Defendant Wexford's policies for providing medical care to inmates. Courts within the Seventh Circuit recognize that these kinds of documents are relevant and admissible to establish this aspect of Plaintiff's claim. *See e.g., Von Ryburn v. Obaisi,* No. 14-CV-4308, 2020 WL 3868715, *13 (N.D. Ill. July 9, 2020) (collecting cases admitting *Lippert* Reports).[7]

### G. Modification of the Current Discovery Schedule.

To accommodate the IDOC Defendants promised supplemental production, this Court's ruling on the present Motion, and the Wexford Defendants' responses to Plaintiff's Second

---

[7] Because Plaintiff has similarly asked for these documents from the Wexford Defendants in his Second Requests (*see* Ex. 2, Requests 24-32), he respectfully requests that the Court's ruling be applied with equal force to the Wexford Defendants' anticipated relevance and burdensomeness objections.

Requests, Plaintiff separately will file a motion proposing a modified discovery schedule. This modified schedule will avoid prejudicing Plaintiff and enable counsel to review all responsive and relevant documents before proceeding with fact depositions and expert disclosures.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an order:

(1) Granting his Motion to Compel;

(2) Directing the Wexford Defendants to produce all documents generated in the last 10 years reflecting agreements by the Wexford Defendants to provide improved medical services to inmates at IDOC facilities that discuss the provision of offsite or specialty care (Ex. 1, at Request 15);

(3) Directing the IDOC Defendants to locate and produce all incident reports regarding Plaintiff generated between August 2017 and present (Ex. 3 at Request 3);

(4) Directing the IDOC Defendants to produce all documents underlying the 2014 and 2018 *Lippert* Reports including but not limited to documents Defendants and other IDOC staff provided to the authors of the Lippert Reports, and documents referenced in the *Lippert* Reports or otherwise relied upon by the authors of the reports in reaching the opinions expressed therein (Ex. 3 at Request 19);

(5) Directing both the Wexford Defendants and/or the IDOC Defendants to produce complete personnel files for Defendants Okezie and Williams (Ex. 1 at Request 8; Ex. 3 at Request 7); and

(6) Ordering the Wexford Defendants to respond to Plaintiff's Second Set of Requests for Production within 14 days of the Court's order granting this Motion;

(7) Granting Plaintiff any and all further relief that the Court deems proper.

If the Court decides to order further briefing on this motion, Plaintiff respectfully request the opportunity to file a reply brief to any response filed by the Defendants.

Dated: January 19, 2021	Respectfully submitted,

/s/ *Maxwell J. Eichenberger*

Michael B. Galibois (6272257)
Maxwell J. Eichenberger (6326853)
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
Telephone: +1 312 207 1000
Facsimile: +1 312 207 6400
MGalibois@reedsmith.com
MEichenberger@reedsmith.com

*Counsel for Plaintiff*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2**

The undersigned below, an attorney licensed in the state of Illinois, hereby certifies that after consultation by telephone and good faith attempts to resolve their differences, the parties are unable to reach an accord regarding the matters addressed herein. The substance of these conversations are summarized throughout this motion.

Counsel for parties met and confer on the following dates:

- On December 15, 2020, Michael B. Galibois and Maxwell Eichenberger (counsel for Plaintiff) conferred via telephone with Brett R. Furmanski (counsel for the Wexford Defendants).

- On December 31, 2020, Maxwell Eichenberger (counsel for Plaintiff) conferred via telephone with Andrew O'Donnell (counsel for the IDOC Defendants).

- On January 11, 2021, Michael Galibois and Maxwell Eichenberger (counsel for Plaintiff) conferred via telephone with Andrew O'Donnell (counsel for the IDOC Defendants).

*/s/ Maxwell J. Eichenberger*
One of Plaintiff's Attorneys

## CERTIFICATE OF SERVICE

The undersigned below, an attorney licensed in the state of Illinois, hereby certifies that a copy of the foregoing was served via ECF, this 19th day of January 2021, upon all counsel of record.

*/s/ Maxwell J. Eichenberger*
One of Plaintiff's Attorneys