IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEWIS LEE CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 CV 1565 |
| | ) | |
| v. | ) | Honorable Franklin U. Valderrama |
| | ) | Judge Presiding |
| RANDY PFISTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL**

Defendants, Randy Pfister, and Walter Nicholson ("IDOC Defendants"), by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois, responds in opposition to Plaintiffs' Motion to Compel [ECF No. 132], stating as follows:

**BACKGROUND**

On October 30, 2018, Plaintiff, an inmate with the IDOC, inmate (number R5026) filed a five Count First Amended Complaint ("Complaint") pursuant to 42 U.S.C. § 1983 against Defendants Randy Pfister and Walter Nicholson. [ECF No. 18]. Count I alleges that the IDOC Defendants were deliberately indifferent to Plaintiff's medical needs. Counts II, III and IV alleges constitutional violations against Co-Defendants Wexford Health Sources Inc., Dr. Okezie, and nurse Williams. Count V alleged Defendants Pfister and Nicholson retaliated against the Plaintiff by canceling his telephone calls and medical appointments, and withheld Good Conduct Credit. Important for this Motion, this Court granted Plaintiff's voluntarily motion to dismiss Count V of his Complaint without prejudice as to Defendant Pfister. [ECF Nos. 26, 29]. To date, Plaintiff has not re-pleaded Count V of his Complaint.

Plaintiff requests that this Court order the Defendants to produce: (1) incident reports related to Plaintiff; (2) personnel filed for Defendants Okezie and Williams; and (3) the documents underlying two reports regarding inadequate treatment at IDOC facilities authored by court appointed experts in *Lippert, et al. v. Gosh*, et al, No. 1:10-CV-04603 (N.D. Ill.) (together the "Lippert Reports"). Plaintiff's Motion to Compel seeks information never previously sought through a formal discovery request, is unduly burdensome and overly broad, and currently not within the possession or control of the Defendants under Rule 26(b)(2)(C)(i).

## APPLICABLE LAW

Federal Courts have broad discretion in matters relating to discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Rule 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In determining scope, courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs it likely benefit." *Id*. The court must limit discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). The Supreme Court has cautioned that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires

2

[protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense….' Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando,* 441 U.S. 153, 177 (1979).

To assess undue burden, "the court asks whether 'the burden of compliance with [the subpoena] would exceed the benefit of production." *Bicycle Peddler*, 2013 WL 4080196 at *2 (citations omitted). The factors to weigh are: (1) is the subpoena is directed to a nonparty; (2) whether the information is relevant, (3) whether the requesting party has a substantial need for the information; (4) is the request is overly broad; (5) whether the time period covered is reasonable; (6) is the request is sufficiently particular; and (7) does the request impose a burden. *Am. Soc'y of Media Photographers, Inc. v. Google, Inc*. 2013 WL 1883204, *2 (N.D. Ill. 2013).

## ARGUMENT

I.  **Defendants object to Plaintiff's untimely and unduly burdensome Motion to Compel.**

   A. **Plaintiff's Motion to Compel is untimely**

Defendants adopt and incorporate by reference Section II(A) of the Wexford Defendants' Response to Plaintiff's Motion to Compel filed by Co-Defendants. [*See* ECF # 103, Co-Defs.' MSJ, pp. 4-6]. In addition to Co-Defendants argument, district courts have denied motions to compel when a party waited more than five months to raise an objection to discovery responses. In *Singletary*, plaintiff filed a motion to compel responses to request for documents more than five months after receiving defendants' responses. *Singletary c. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 1992 WL 199827 (N.D. Ill August 10, 1992). In addition to the 5-month delay, the Court previously granted multiple extensions of time to complete fact discovery. *Id.* at *2. The Court noted that while Fed. R. of Civ. P. 37 does not set a time limit on a Rule 37 motion, the orderly process of discovery requires that motions to compel be brought within a reasonable

3

time limit. *Id.* The Court ruled that by delaying his motion for over 5 months, plaintiff failed to bring his motion within a reasonable amount of time. *Id.*

Like *Singletary*, Plaintiff failed to bring this Motion in a timely manner. First, like *Singletary*, this Court has granted Plaintiff multiple extensions of time. [ECF Nos. 63, 96]. More importantly, where the Court noted a 5-month delay was unreasonable; here, Plaintiff waited over 18 months to bring this motion to compel. Plaintiff offers no reasoning behind this delay except for the fact that the Court stayed discovery while attempting to settle this case. [ECF #99]. Plaintiff fails to realize that discovery was stayed on January 9, 2020, and reopened on August 13, 2020. [ECF Nos. 65, 91]. That means that Plaintiff had 6 months from the date he received IDOC Defendants response to file an objection, and then another 4 months after discovery was reopened. While incorporating the stay of discovery, Plaintiff still had over 10 months to file an objection. *Like Singletary*, waiting 10 months to file a motion to compel is unreasonable. As such Plaintiff's Motion should be denied.

### B. Plaintiff's Incident Reports

Defendants object to searching and producing all incident reports in response to Plaintiff's Request No. 3 because the request does not seek "incident reports," and even if it did, the request is unduly burdensome, overly broad, not sufficiently particular and not proportional to the needs of this case. In Plaintiff's Motion, he seeks the court to compel the Defendants to locate and produce all incident reports regarding the Plaintiff generated between August 2017, and present. [ECF No. 99, pg. 13].

Plaintiff represents to this Court that their request for these incident reports are responsive to Request No. 3. This catch-all request states:

> 3. All Documents and Communications relating to the allegations in Plaintiff's Amended Complaint, including without limitation:

4

    (a)    all Documents and Communications between and/or amongst any of the Defendants;

    (b)    all Documents and Communications between and/or amongst any of the Defendants and any individuals and/or entities who have provided medical treatment to Plaintiff following his August 15, 2017 injury;

    (c)    all Documents and Communications between and/or amongst any of the Defendants and any employee and/or agent of Stateville and/or the IDOC;

    (d)    all Documents and Communications between any of the Defendants and any employee or agent of any of the Wexford Defendants; and

    (e)    all Documents and Communications between any of the Defendants and Plaintiff.

[Ex. A, ¶ 3].

Plaintiff seeks information never previously sought through a formal discovery request. Fed. R. Civ. P. 26; *see,* e.g., *M. McGee Design Studio, Inc. v. Brinson*, 1994 WL 380613, *10 (N.D. Ill. Jul. 18, 1994) (holding that request for all evidence plaintiffs intended to rely upon was overly broad in contravention of the Federal Rules, and that "discovery does not mandate that each party turn everything in its possession over to the other side."); *see also Piller v. Perftech*, Inc., 2011 WL 2293363, *5 (N.D. Ill. 2011) (refusing to compel defendant to produce discovery for a catch-all request); *see also Whitlow v. Martin*, 259 F.R.D. 349, 354-55 (C.D. Ill. 2009) (refusing to compel defendant to answer interrogatory subpart that required identification of precise documents that supported each allegation because such a request was unduly burdensome).

Rather than seek documents with particularity as required under Federal Rules of Civil Procedure 34(b), Plaintiff attempts to force the IDOC Defendants to figure out what documents he seeks. *See Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004). Like *McGee*, this catch-all request seeking any and all documents related to Plaintiff's Complaint is improper. Here, Plaintiff Request No. 3 makes no mention of any "incident reports." Moreover, it is clear, Request No. 3 is limited to the allegations of Plaintiff's Complaint. The only allegations of retaliation against Defendant Nicholson is his involvement in canceling his telephone calls, medical appointments, and withholding Good Conduct Credit [ECF No. 18]. Yet, in Plaintiff's Motion, he

5

is seeking an incident report regarding a moldy cell between May 26, 2019 and September 12, 2019. [ECF No. 99]. There is no allegation of retaliation against Defendant Nicholson regarding a moldy cell in 2019. Nor could there be because Defendant Nicholson left his position as Warden of Stateville on or around December 31, 2018. Fed. R. Civ. P. 34(b) requires that requests for documents set forth the items to be produced "with reasonable particularity." Plaintiff's request for any and all documents related to his Complaint is overboard. Plaintiff has not provided this Court with any information on how an incident report concerning a moldy cell, or any incident report falls within the parameters of Request No. 3. As such, Plaintiff Motion should be denied.

To the extent this Court finds that Plaintiff sufficiently requested incident reports and that the incident reports sought involve allegations of his Complaint, this request is overly broad and unduly burdensome. On January 11, 2020, the parties had a meet and confer regarding this request. The undersigned explained to Plaintiff's counsel, Max Eichenberger and Michael Galibois, that incident reports are physically filed by date, not by inmate, and that thousands and thousands are filed every year at Stateville. Stateville estimates that at least 575 incident reports are filed every month. The undersigned recently became aware of an informal document that logged some incident reports at Stateville in 2019, but this is not a formal document, and most importantly for this case, is not a comprehensive list of all incident reports since 2017. As a result, Plaintiff request would require a Stateville Correctional employee to search through 24,150 (42 months x 575) incident reports. The undersigned asked that Plaintiff's counsel provide dates in which to search for reports, if they exist. In particular, the undersigned asked if they are still seeking all incident reports from 2017 to the present. Plaintiff's counsel seemed to agree that this request was unduly burdensome and that if we could locate the incident regarding Ms. Ramel, we could resolve this

6

issue. Instead of trying to resolve this dispute and limit the request to this single incident report, Plaintiff's counsel filed this Motion just nine days later.

This daunting task is overly broad and not sufficiently particular as required by Federal Rule of Civil Procedure 26. It is clear that "'the burden of compliance would exceed the benefit of production," as there is no evidence that incident reports regarding Plaintiff is relevant to this case. *Bicycle Peddler*, 2013 WL 4080196 at *2 (citations omitted).

### C.  Co-Defendants Okezie and Williams' personnel file

Next, Plaintiff argues that the IDOC Defendants should produce the personnel files of Co-Defendants Dr. Okezie and nurse Williams. Plaintiff states that it "is informed and believed that the IDOC Defendants have access to Defendants Okezie and Williams' personnel files" based on the contract it has with Wexford. During the meet and confer on January 11, 2021, the undersigned affirmatively stated that the IDOC Defendants do not have access to Okezie and Williams' personnel files. There was no ambiguity in the undersigned response and stated he would provide them with an affidavit if need be. Plaintiff counsel replied stating, "I don't care who gets me the files, as long as I get them." Despite this conversation, Plaintiff filed this Motion to Compel nine days later.

Pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i), Plaintiff is seeking documentation that is not within the possession or control of the IDOC Defendants. This was stated in Defendants response to Plaintiff's Request No. 19, during the meet and confer on January 11, 2021, and now in this response. *See* Declaration of Delcine Thompson, attorney within the Illinois Department of Corrections. Exhibit C. The fact that Plaintiff filed a Motion to Compel against the IDOC Defendants despite knowing that they did not have the documents it was seeking, is in bad faith. As such, this Court should deny Plaintiff's Motion.

7

### D. Lippert Documents

Defendants object to Plaintiff's request for Lippert documents because it is unduly burdensome, overly broad, not sufficiently particular and not likely to lead to admissible evidence. Plaintiff requests the 2014 and 2018 reports, and all documents underlying this report.

*Lippert, et al. v. Ghosh*, No. 1:10-CV-4603 (N.D. Ill.) is a class action which impacts all 29[1] IDOC facilities. The *Lippert* class is defined as "all prisoners in the custody of the Illinois Department of Corrections with serious medical or dental needs." *Id.* In 2014 and 2018, two separate court appointed experts authored reports summarizing their findings of medical, dental, vision, and mental healthcare provided within IDOC facilities. Information was gathered from all IDOC facilities, including inmates' protected health information, inmates' death records, and various health care logs maintained by the Illinois Department of Corrections. Additionally, the court appointed experts traveled throughout the state of Illinois to view documents on the premises of the individual facilities. This occurred for both the 2014 and 2018 reports.

On January 11, 2020, the undersigned contacted Plaintiff's counsel in an attempt to clarify his broad request for documents and to reach an amicable resolution. The parties were unable to reach an agreement.

#### a. The Lippert Documents were not sought through a formal discovery request.

Plaintiff represents to this Court that their request for these *Lippert* documents are responsive to Request No. 19. This boilerplate request states:

> 19. All Documents and Communications created in past ten (10) years concerning or reflecting any study, report, analysis, internal audit, assessment, investigation, or other inquiry into the quality of medical care provided to inmates at Stateville.

---

[1] Since the inception of the *Lippert* litigation, the number of facilities under IDOC's control has changed. At no time were there fewer than 26 facilities, as of today, there are 29.

[Ex. A, ¶ 19].

A document request that fails to seek documents with the requisite specificity is beyond the scope of Federal Rule of Civil Procedure 34. Here, Plaintiff's request is not sufficiently particular to encompass *Lippert* documents. Defendants simply are not required to guess that this request sought *Lippert* documents. *See Ballard v. Cit. Cas. Co.*, 196 F.2d 96, 102 (7th Cir.1952), (stating that lawyers are not endowed with the gift of prophecy or clairvoyance. *Ballard v. Cit. Cas. Co.*, 196 F.2d 96, 102 (7th Cir.1952). Defendants cannot crawl into their adversary's minds. Cf. Posner, Overcoming Law, 276 (1995). "For better or worse, the American system is an adversarial one, and while lawyers are constrained quite appropriately by a strict set of ethical rules, they have no obligation to assist an opponent in establishing claims." *F.E.L. Publications v. Catholic Bishop of Chicago*, 1989 WL 100006 *3 (N.D. Ill. Aug.22, 1989).

The IDOC Defendants are only obligated to answer the questions that are asked, and are not required to guess at which documents would be responsive. *Bruggeman*, 219 F.R.D. at 436. Fed. R. Civ. P. 34(b) requires that requests for documents set forth the items to be produced "with reasonable particularity." Plaintiff request for all Documents and Communications concerning or reflecting any report, internal audit, investigation or any other inquiry is overbroad and fails to incorporate the *Lippert* documents with reasonable particularity. Therefore, Plaintiff's Motion should be denied.

### b. The burden of the proposed discovery outweighs its probable benefit

At the outset, Defendants point out that the 2014 *Lippert* Report and its underlying documents predates Plaintiff's allegations, and the time-period in question in this claim. Plaintiff has not demonstrated how documents pre-dating 2014 would be relevant to his August of 2017

claim. Accordingly, the potential modicum of benefit gained from these documents does not outweigh the burden imposed on the IDOC Defendants for the production of these documents.

Plaintiff's request would place an undue burden on the IDOC Defendants. For the 2014 Report, IDOC is unable to provide an estimate of the number of documents this request would entail in part because the individuals with personal knowledge of this are no longer employed by IDOC. In fact, it would be impossible to identify documents produced in the 2014 report as the files are not in a central location or stored in a manner that would be easily identifiable. Additionally, a number of the documents reviewed by the court appointed expert were viewed on-site during their visits to various facilities, including Stateville. There is no record of what these experts looked at during their visits at Stateville and even if these documents are mentioned in the expert reports, the burden on IDOC to identify them is boundless. There is simply no way to easily identify or determine where those documents are currently kept because they were not "produced" to the experts. For the 2018 report, the amount of production would be approximately 15,000-20,000 pages in addition to medical records. As a result, the IDOC Defendants will be required to engage in extensive and costly search for documents that are only potentially relevant and that will require prolonged judicial supervision. *See* Ex. C

In support of its Motion, Plaintiff relies on *Lymon v. Dr. Chamberlain* et al., 2020 WL 6940985 at *1 (N.D. Ill. Nov. 24, 2020). *Lymon* is distinguishable. In *Lymon*, the Court held that the Defendants failed to establish an undue burden of producing the *Lippert* report. Unlike *Lymon*, the Defendants have established an undue burden. *See supra.* Additionally, Defendants dispute the courts holding that the "[L]ippert report makes specific references to categories of documents and inmate files…and that the IDOC's receipt of the reports reduces the burden on the IDOC in identifying the documents requested." *Id.* at *5. A file for an inmate receiving medical care will

contain hundreds; if not thousands of pages (IDOC Defendants have already produced 2500 pages of Plaintiff's medical file). To suggest that knowing a class of documents will assist IDOC in identifying the reports tendered to the Lippert experts over six years ago is unsound. Moreover, unlike *Lymon*, Plaintiff's request is not narrowly tailored, but even if it were, as argued, it would be impossible to determine the underlying documents that the experts relied on.

Furthermore, the potential benefit from the production of underlying documents to the *Lippert* Reports does not outweigh the burden imposed upon IDOC in gathering, reviewing, redacting, and producing these documents. Additionally, production of the requested documents would needlessly compromise third party inmates' protected information. Respondents do not have standing to waive third-party inmates' highly sensitive and protected medical information, which includes mental health records and AIDS records. (*Nw. Mem'l Hosp.*, 362 F.3d at 926, the Court explaining, "Most medical records are sensitive, and many are as sensitive as late-term abortion records, such as the records of AIDS patients."). Asking the IDOC Defendants to produce this highly sensitive and protected information does not outweigh any potential benefit to Plaintiff's claim concerning the medical care he received for his hernia condition at one of twenty-eight of IDOC's facilities.

While Rule 26 allows for the production of inadmissible evidence, the Seventh Circuit and the district court still take into account discovery that is reasonably calculated to lead to admissible evidence. *See Camilotes v. Resurrection Healthcare*, 2010 WL 3168314, at *2 (N.D. Ill. 2010); *also see Automated Solutions Corp. v. Paragon Data Sys.*, 231 Fed. Appx. 495, 497 (7th Cir. 2007). The Lippert report is not reasonably calculated to lead to admissible evidence as several district courts have declined to consider it in support of Eight Amendment claims. *Thomas v. Wexford*, 414 F. Supp. 3d 1154 (N.D.Ill. 2019); *Bradford v. Wexford Health Sources*. Inc., 2020

WL 586810 at *11 (N.D. Ill. 2020), citing *Boyce v. Wexford Health Sources, Inc.*, 2017 WL 1436963, at *5, 2017 U.S. Dist. LEXIS 61655 at *13-16 (N.D. Ill. Apr. 24, 2017) (collecting cases and finding Lippert report to be inadmissible hearsay in ruling on summary judgment); *Mathis v. Carter*, No. 2017 WL 56631, at *5, (N.D. Ill. Jan. 5, 2017). Based on case law, it is clear, the Lippert Reports will not be admissible.

## CONCLUSION

Based on the foregoing, this Court should exercise its discretion where Plaintiff is filing a Motion to Compel that does not comport with the requirements of Federal Rules of Civil Procedure 26 and 34 and seeks to impose an undue burden on the IDOC Defendants. Therefore, this Court should deny Plaintiff's Motion to Compel.

Dated, February 3, 2020

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By: /s/ Andrew O'Donnell
Andrew O'Donnell
Assistant Attorney General
100 W. Randolph St., 13th Floor
Chicago, Illinois 60601
T: 312-814-6135
aodonnell@atg.state.il.us
*Attorney for Defendants*

12

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 3, 2020, he electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Andrew O'Donnell