**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEWIS LEE CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18-cv-01565 |
| | ) | |
| RANDY PFISTER, WALTER NICHOLSON, | ) | Hon. District Judge Franklin U. Valderrama |
| DR. OKEZIE, MEDICAL STAFF MEMBER | ) | Hon. Magistrate Maria Valdez |
| L. WILLIAMS, WEXFORD HEALTH | ) | |
| SOURCES INC. AND JOHN DOE AND | ) | |
| JANE DOE, UNKNOWN EMPLOYEES OF | ) | |
| THE ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS AND WEXFORD HEALTH | ) | |
| CARE, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Plaintiff's Motion seeks four categories of documents: personnel files for the two individual Wexford Defendants,[1] Wexford's agreements to improve care at IDOC facilities, incident reports documenting Plaintiff's treatment at Stateville, and documents already collected and produced in the *Lippert* litigation. Each category of documents is responsive to Plaintiff's original requests served in May 2019; yet, the Defendants did not produce them, nor did they advise in most instances that such documents existed and were being withheld. Rather, as their Responses to the present Motion make plain, Defendants have no justifiable reason for failing to comply with their discovery obligations. In fact, neither of the Defendants offer *any* legitimate reason why they somehow are exempt from participating in basic discovery.

---

[1] Plaintiff will use the same abbreviations as in his opening brief (ECF 99).

## I.  ARGUMENT

### A.  All Fact Discovery Remains Open And This Motion, Brought Two Months Before The Fact Discovery Cutoff, Is Timely.

Defendants first claim Plaintiff's challenge to their deficient discovery responses is untimely.  However, they are mistaken.

 "Fact discovery" remains open, and this includes written discovery. (*See* ECF 98 (resetting the close of "fact discovery" to March 11, 2021).) Indeed, there has been no order in this case distinguishing between written and oral fact discovery, much less an order that sets different schedules under which written discovery somehow now is closed.

Notably, the Wexford Defendants do *not* disagree. Instead, they complain that three status reports discuss expected depositions and do not discuss further written discovery. (*See* Wex. Resp, ¶ 17.)  That is true. But the fact that those status reports do not discuss additional written discovery, or anticipate the unexpected need to compel Defendants' compliance with previously served discovery, does not mean written discovery is now somehow closed. Rather, fact discovery has *never* been closed in this case, and it remains open. (*See* Mot., pp. 6-7) *Id*. So try as they might, the Wexford Defendants cannot unilaterally close written discovery to free themselves of the obligation to produce the documents responsive to Plaintiff's written discovery.[2]

The IDOC Defendants take a different approach, but it too fails. The IDOC Defendants do *not* dispute that written discovery remains open; instead, they argue the present Motion is untimely. But the very case they cite proves otherwise. In *Singletary v. Continental Illinois Nat.*

---

[2] Defendants also overlook why two of the three status reports focus on depositions. The August 2020 Joint Status Report was filed when discovery was re-opened after a nearly yearlong stay and oral discovery was the next logical step. (*See* ECF 90.) As for the November 2020 Second Deposition Scheduling Report, it is unsurprising that the report discussed deposition scheduling, since it was a "*Deposition* Scheduling Report." (*See* ECF 94.)

*Bank and Trust Co. of Chicago*, the district court denied the plaintiff's motion to compel as untimely because it was filed *one business day before the close of all discovery*. No. 89 C 2821, 1992 WL 199827, *1 (N.D. Ill Aug. 10, 1992).[3] But here, Plaintiff filed this Motion *over two months before fact discovery cut-off*. Moreover, the dispute in *Singletary* involved a discovery issue that the parties had already negotiated for five months. *Id*. at *1-2. Here, because the IDOC Defendants did not indicate it was withholding the documents sought by this Motion, Plaintiff only recently learned of this discovery dispute, after which Plaintiff promptly filed this Motion.

Finally, both Defendants cite the length of this case, but they ignore that the majority of that time has focused on settlement.[4] In an effort to exaggerate the perceived delay, Defendants focus on the January 9, 2020, order staying discovery (ECF 65), ignoring that the parties turned their attention to settlement starting September 18, 2019, when this Court ordered Plaintiff to submit his settlement demand letter. (*See* ECF 58.) Defendants also ignore COVID, and after the case was stayed on January 9, 2020 for purposes of scheduling a settlement conference, that COVID further delayed the eventual settlement conference at least three (3) months to July 28, 2020.

That aside, neither the Wexford nor IDOC Defendants should be allowed to benefit from a delay they caused. Given that their July 2019 responses were not compliant with Fed. Civ. P. Rule 34(2)(C) (*see* Mot. At pp. 3-4), any delay in resolving this Motion was caused by them. While conversely, Plaintiff has promptly and diligently pursued discovery since it reopened on August 13, 2020, taking four (4) depositions and initiating meet and confer conferences with

---

[3] The IDOC Defendants did not attach a copy of *Singletary*, which was published in an electronic database only. Plaintiff has attached *Singletary* hereto as Exhibit 6, along with the other authority cited herein that is published only on an electronic database. Plaintiff continues exhibit numbering consecutively from his opening brief.
[4] Notably, neither party cites a case holding that the overall length of a litigation weighs on the timeliness of this Motion or Plaintiff's other discovery.

both sets of Defendants—all of which brought into focus the full scope of Defendants' non-compliance, and led to this Motion.

**B.    Defendants Have Not Met Their Burden To Show That Plaintiff Is Not Entitled To Defendant Okezie's And Williams' Personnel File.**

Defendants do not even venture to explain why the personnel files of the Defendants that treated Plaintiff (which may contain complaints similar to those brought by Plaintiff) are not responsive. So the only question is whether the files' production is unwarranted. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). It is not.

The Wexford Defendants' opposition to producing Defendant Okezie's and Williams' personnel files is that Plaintiff (and Plaintiff's counsel) cannot be trusted. (*See* Wexford Resp., ¶¶ 24-27.) This argument (and the Wexford Defendants' brief) completely ignores the parties' agreement that "[e]xcept on privilege grounds … no party may withhold information from discovery on the ground that it requires protection greater than that afforded," by the protective order. (*See* ECF 57, ¶ 9.) They make no claim of privilege. Instead, they attack Plaintiff's credibility, focusing on crimes he was convicted of nearly fifteen (15) years ago.[5]  Of course, Plaintiff's criminal history is immaterial; it does not deprive him of his right to discovery under the Federal Rules of Civil Procedure. This is particularly true where Plaintiff's appointed counsel agrees to designate the personnel files "Attorneys Eyes Only" or to accept these documents with Defendants' contact or other personally-sensitive information redacted.

Additionally, the Wexford Defendants' citation to *Vermillion v. Corizon Health, Inc.*, actually supports Plaintiff's right to the personnel files. 2019 U.S. App. LEXIS 9839 (7th Cir. 2019). In *Vermillion*, the Seventh Circuit affirmed the district court's order denying, in part, a

---

[5] *See Offenders*, Ill. Dept. of Corr., https://www2.illinois.gov/idoc/Offender/pages/inmatesearch.aspx (Search for IDOC Number, number: R59026) (last visited Feb. 10, 2021).

motion to quash a subpoena to Wexford for a former employee's personnel file. *See Vermillion v. Corizon Health Inc.*, No. 16-cv-01723, at ECF No. 50 (S.D. Ind. Apr. 21, 2017). Although the district court quashed the subpoena as to the physician's address and bank account information, it *compelled* Wexford to produce prior complaints in the physician's file because, "whether [the physician] has been subject to complaints regarding medical treatment he has provided may be relevant to" the Plaintiff's claim against the doctor and his new employer. *Id*. This Court should follow *Vermillion* because Okezie's and Williams' personnel files are likely to contain any such evidence (including similar complaints) that may be relevant to Plaintiff's claims.

For their part, the IDOC Defendants baselessly accuse Plaintiff and his counsel of bringing his motion in "bad faith" because IDOC does not have Defendant Okezie's and Williams' personnel files. (*See* IDOC Resp., p. 7.) In support of this accusation, the IDOC Defendants point to unsupported representations of counsel and an employee declaration stating that IDOC "does not possess or control personnel files of Wexford employees." (Decl. of Delcine Thompson, ¶ 4, IDOC Resp., Ex. 3, ECF 105-3.) However, neither Ms. Thompson nor Defendants' counsel indicated that the personnel files are not "available" to Defendants. In fact, they are available. IDOC is contractually entitled to access such personnel files. The contract between IDOC and Wexford provides: Wexford must "maintain personnel files on all contract employees at the Health Care Unit … and shall make these records available to the Center's" chief administrative officer, *i.e.* Defendants. (*See* Mot. at 10.) Therefore, the Court should order the IDOC Defendants to produce these personnel files.

**C. The Wexford Defendants Have Not Met Their Burden To Withhold Agreements By Wexford To Provide Improved Medical Services.**

Prior agreements by Wexford to provide improved medical care at IDOC facilities, especially at Stateville, are reasonably calculated to lead to discovery of relevant and admissible

5

evidence, the appropriate inquiry under Fed. R. Civ. P. 26(b)(1).[6] In addition to showing that Wexford and its employees were on notice of the inadequacies of their care (which the Wexford Defendants do not dispute these documents show) these documents are particularly relevant to Plaintiff's *Monell* claim (Am. Compl. ¶¶ 92-104) because they will demonstrate a pattern or practice of unconstitutional behavior by Wexford. *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003) (in a *Monell* claim, "proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference").

Moreover, the Wexford Defendants' unsupported argument that producing these agreements would be burdensome does not meet the level of specificity required by this Court. *See Schloss v. City of Chicago*, No. 18 C 1880, 2020 WL 4339282, *7-8 (N.D. Ill. July 28, 2020) (Valdez, J.) (attached at Mot. Ex. 5, pp. 23-28). Although they contend some of these agreements contain a confidentiality provision, they provide no details as to which, or how many agreements contain these provisions. Nor do they explain how much "time and cost" would be incurred in producing these documents.

The Wexford Defendants' reliance on *Ratchford v. Aeg Ventures*, does not help their cause. No. 17 CV 07368, 2019 WL 10248702 (N.D. Ill. Aug. 6, 2019) (Wexford Resp., Ex. 1). In *Ratchford*, the Defendant established the number of agreements at issue, identified exactly how many of those agreements had confidentiality clauses. The court in *Ratchford* used this specificity to evaluate the burden of production, weigh it against the potential benefit, and eventually ordered production of the agreements without confidentiality clauses. *Id*. at *5.

---

[6] Whether the agreements are admissible under the Federal Rules of Evidence, as the Wexford Defendants argue, (*see* Wexford Resp., ¶29), is immaterial.

*Ratchford* illustrates that an objection based on burden must be specific, unlike those raised by the Wexford Defendants. *Ratchford* also demonstrates that such agreements (when non-confidential) should be produced.

**D. The IDOC Defendants Have Not Met Their Burden To Withhold Incident Reports Relating To Plaintiff Generated Between August 2017 And Present.**

The incident reports Plaintiff requests all bear on Defendants' alleged knowledge of his inadequate care and retaliation. (*See* Mot., pp. 9-10.) The IDOC Defendants do not disagree. Rather, they attempt to argue that such incident reports were not requested, or are otherwise are unduly burdensome to produce. Both arguments are unavailing.

As the IDOC Defendants note, discovery requests must only be reasonably particular (*see* IDOC Resp., pp. 5-6.); here, Plaintiff's request was reasonably particular—especially given that he did not know that relevant incident reports existed as the IDOC Defendants failed to disclose—in violation of Rule 34(b)(2)(C) that they were being withheld. Specifically, Plaintiff's Request No. 3 asks for "Documents and Communications between and/or amongst any of the Defendants and any employee and/or agent of Stateville and/or the IDOC" that "relat[e] to the allegations in Plaintiff's Amended Complaint." (*See* Ex. 3 to Mot, Request 3.) Incident reports discussing incidents of alleged retaliation clearly are responsive to this Request. And even if the IDOC Defendants want to claim that they initially did not know what Plaintiff sought, that was no longer the case after Plaintiff's counsel expressly asked for incident reports in his meet-and-confer correspondence. (*See* 2020-12-17, Eichenberger Letter to A. O'Donnell re: Discovery, attached hereto as Exhibit 7.) *See also Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709 (April 17, 2019, N.D. Ill.) (noting that overly broad discovery requests can be narrowed through subsequent communication).

The IDOC Defendants also cannot claim complying with the Request is overly burdensome. Notably, a number of courts have ordered IDOC to search for and produce relevant incident reports, and the IDOC Defendants do nothing to challenge this point. (*See* Mot., p. 10 (citing *Smith v. Sternes*, No. 02 C 50178, 2003 WL 21418356, *4 (N.D. Ill. June 18, 2003) and *Pupo-Leyvas v. United States*, No. 208CV344RLY-WGH, 2009 WL 2245073, *3 (S.D. Ind. July 27, 2009) (attached at Mot. Ex. 5, pp. 29-35)).) Moreover, Plaintiff tried to ease the burden of production by providing the exact date range during which Plaintiff was housed in the moldy cell, and during which the sought-after incident report would have been created. (*See* email exchange between counsel for Plaintiff and counsel for the IDOC Defendants, attached hereto as Exhibit 8.) And still, the IDOC Defendants have stood by their burdensomeness objections. (*Id.*) However, this objection is baseless.

The Court must order the IDOC Defendants to produce all responsive incident reports relating to Plaintiff. [7]

### E. The Benefit Of Producing Documents Underlying The *Lippert* Reports Outweigh Any Burden In Collecting And Producing Them.

The IDOC Defendants' main argument[8] with respect to the *Lippert* documents, that their production is unduly burdensome, fails. With respect to the documents underlying the 2014 report, they argue that they are not "easily identifiable." (IDOC Resp., p. 10.) Rule 26 does not

---

[7] The IDOC Defendants separately object to producing an incident report related to Plaintiff's housing in a moldy cell because Defendant Pfister—the warden at that time—has no current retaliation claim against him. (*See* IDOC Resp., pp. 5-6.) However, Plaintiff only learned that Pfister was personally aware that Plaintiff was being house in the moldy cell through the IDOC Defendants' supplemental production last month—January 2021. These newly discovered, post-pleading, facts justify the filing of a supplemental complaint pursuant to Rule 15(d), and this particular incident report is undoubtedly responsive.

[8] The IDOC Defendants' arguments that these documents were not specifically requested fail for the same reasons described *supra* p. 7 with respect to the incident reports. Namely, Plaintiff's requests were reasonably particular without requesting these documents by name and were even more particular following the parties' meet-and-confer. (*See* Ex. 7 at 4.)

ask whether documents are "easily identifiable," but "whether the burden or expense of the proposed discovery outweighs its likely benefit." For the same reason, the IDOC Defendants' indication that the 2018 *Lippert* documents include between 15,000 and 20,0000 pages is irrelevant where, as here, the benefit of this discovery is high.

The findings of the *Lippert* experts on the inadequacy and untimeliness of medical care at Stateville in 2014 and 2018 are directly relevant and closely track the allegations in Plaintiff's Amended Complaint. IDOC's argument that the 2014 documents are not probative (conceding that the 2018 documents are) ignores Plaintiff's argument as to how the 2014 and 2018 documents will help establish that his experience was not an isolated occurrence and that Defendants were on notice of systemic problems with the way inmates at Stateville receive medical care—specifically in connection with outside medical referrals. Courts routinely recognize the probative value of documents for these purposes. *See Awalt v. Marketti*, No. 11-C-6142, 2012 WL 6568242, at *8 (N.D. Ill. Dec. 17, 2012) (granting motion to compel production of five years of records regarding other inmates' complaints of inadequate medical care at jail where plaintiff allegedly received inadequate medical care in violation of §1983 and citing other cases granting discovery regarding five years of records)).

The IDOC Defendants' case law finding that the *Lippert* reports themselves are inadmissible (*see* IDOC Resp., pp. 11-12) merely highlights Plaintiff's need for the documents underlying the reports, so as to avoid any concerns regarding admissibility.

Moreover, the IDOC Defendants' claim that identifying the relevant documents is "impossible" has no merit because the expert reports themselves, and their appendices, direct IDOC to the documents relied upon. For example, the 2014 report includes appendices that identify the specific medical records reviewed at each facility. (*See* Stateville specific excerpt

from Dr. Shansky's 2014, attached hereto as Exhibit 9, pp. 40-41 (appendix identifying records reviewed).) [9] Moreover, the 2018 report repeatedly identifies the documents reviewed in reaching the conclusion of each section. (*See e.g.,* Stateville specific excerpt from Dr. Puisis's 2018 report, attached hereto as Exhibit 10, p. 49, n.77 (example of how report notes records reviewed).) Plaintiff is not asking IDOC to recreate site-visits, or step into the minds of the *Lippert* experts, merely to access the documents the *Lippert* experts carefully catalogued.

In an effort to further ease the burden, Plaintiff will limit his request to the documents underlying the *Lippert* reports related to the facility at which Plaintiff was incarcerated, Stateville. Moreover, Plaintiff will further narrow his request to only those documents which underlie the portions of the *Lippert* Reports that deal with Chronic Care (Ex. 9, pp. 12-21; Ex. 10, pp. 24-38), and Specialty Consultations, (Ex. 9, pp. 23-24; Ex. 10 at pp. 48-50).

The IDOC Defendants' only remaining argument is that Plaintiff asks them to "waive third party inmates' highly sensitive and protected medical information." (IDOC Resp., p. 11.) That is a false concern because the protective order in this case limits the use of any materials designated as Confidential in this litigation and IDOC could easily redact any personal identifiers of other inmates. Rather than barring discovery, courts have ordered production of medical information of other inmates in *Monell* cases regarding inadequate medical care, to show a policy was involved. *See Doe v. MacLeod*, No. 3:18-CV-3191, 2019 WL 2601338, at *3 (C.D. Ill. June 25, 2019) (overruling in part IDOC's objections to Magistrate Judge's order granting motion to compel compliance with subpoena in a §1983 case and ordering that personal identifiers be redacted from records produced).

---

[9] Although Plaintiff only has access to the publicly-filed version of this document which has patient information redacted, IDOC was ordered to receive confidential versions reports. *See Lippert v. Gosh* No. 1:10-cv-04603 (N.D. Ill. Jul 23, 2010), at ECF No. 244 at 4-5, 7 (regarding 2014 report), ECF No. 593 at 4-5 (regarding 2018 report).

### F.    Modification Of The Current Discovery Schedule.

While fact discovery is currently scheduled to end on March 11, 2021, due to Defendants' noncompliance with the specific Requests subject to this Motion, Plaintiff filed a separate Motion to extend the current discovery deadline. (*See* ECF 101.) This extension is necessary because the Court's ruling on this Motion will impact the remaining discovery.[10] Moreover, although Defendants portray Plaintiff as dragging his feet, they ignore the fact that Plaintiff just received a supplemental production of emails that he should have received in July 2019, and still does not even know which, if any, email attachments the IDOC Defendants will provide, as they withheld those attachments when producing the emails.

If Defendants had it their way, the parties would schedule the remaining party depositions, take them without information Plaintiff needs to meaningfully proceed (including, per above, documents still being produced and documents subject to the present Motion), and then possibly take the depositions again if Court rules that Plaintiff is entitled to more information. Rather than proceed down this uncertain and potentially wasteful path, Plaintiff seeks an extension to give the parties enough time to resolve their outstanding written discovery issues and take the remaining depositions.

**WHEREFORE**, Plaintiff respectfully requests that the Court Grant his Motion to Compel (ECF 99).

---

[10] Plaintiff served additional written discovery on all Defendants on February 8, 2021, to allow Defendants sufficient time to respond before the current March 11, 2021 fact discovery cutoff. In an effort to preserve Plaintiff's rights to certain documents regardless of the outcome of the Motion, the additional discovery requests seek some materials that are the subject of this Motion. That Plaintiff needed to serve this discovery "just in case" should not be construed as an admission with respect to this Motion, but further highlights the need to extend the schedule here.

Dated: February 10, 2021                              Respectfully submitted,

                                                           */s/ Maxwell J. Eichenberger*

                                                            Michael B. Galibois (6272257)
                                                            Maxwell J. Eichenberger (6326853)
                                                            Hubert J. Zanczak (6336992)
                                                            Reed Smith LLP
                                                            10 South Wacker Drive, 40th Floor
                                                            Chicago, IL 60606-7507
                                                            Telephone: +1 312 207 1000
                                                            Facsimile: +1 312 207 6400
                                                            MGalibois@reedsmith.com
                                                            MEichenberger@reedsmith.com
                                                            HZanczak@reedsmith.com

                                                            *Counsel for Plaintiff Lewis Lee Clark*

## CERTIFICATE OF SERVICE

The undersigned below, an attorney licensed in the state of Illinois, hereby certifies that a copy of the foregoing was served via ECF, this 10th day of February 2021, upon all counsel of record.

/s/ Maxwell J. Eichenberger
One of Plaintiff's Attorneys